UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WHO DAT?, INC., | * | CIVIL ACTION NO. 3:10-cv-02296 |
| | * | |
| Plaintiff | * | |
| | * | |
| VERSUS | * | JUDGE BERRIGAN |
| | * | |
| NFL PROPERTIES LLC; NEW ORLEANS LOUISIANA SAINTS, LLC; THE SECRETARY OF STATE OF LOUISIANA, and THE STATE OF LOUISIANA. | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| Defendants | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants, NFLP Properties, LLC ("NFLP") and the New Orleans Louisiana Saints, LLC ("Saints") (collectively, the "NFL Parties") respectfully submit this reply memorandum in support of their motion to dismiss various counts asserted in the Complaint filed by Who Dat, Inc ("WDI"). For the following reasons, the NFL Parties' motion to dismiss should be granted, and the relevant counts should be dismissed with prejudice.

I.   **Preliminary Statement**

Nothing in WDI's Opposition,[1] First Amended Complaint, or Second Amended Complaint (assuming it is allowed) alters the inescapable conclusion that Counts 2, 5, 6, and 12-16 of WDI's Original Complaint should be dismissed with prejudice, for at least the following reasons:

- First, WDI has conceded that its tortious interference with contract (Count 6), Florida state trademark infringement (Count 15), and conspiracy (Count 16) counts in its Original Complaint should be dismissed, as it has wholly failed to respond to the NFL Parties' motion to dismiss as to those counts;

- Second, WDI's reliance on common law principles does not save its claims for federal product disparagement (Count 12) from dismissal;

- Third, WDI's reliance on Louisiana law governing the perfection of trademark assignments does nothing to change the fact that its breach of contract claims (Count 5) prescribed;

- Fourth, WDI is not entitled to the extraordinary protection of *contra non valentem* to salvage its fraud and negligent misrepresentation claims (Counts 13 and 14); and

- Fifth, WDI still has no right to claim damages resulting from the cancellation of a state trademark registration (Count 2).

II.  **Argument and Citation to Authorities**

A.   **WDI's Opposition Relies on an Improper Legal Standard**

Within the past three years, the United States Supreme Court has re-written the legal standards under which a Federal Rule of Civil Procedure 12(b)(6) motion is to be decided.

---

[1]   As an initial matter, WDI's Opposition is untimely. WDI originally chose to file this suit in the Middle District of Louisiana, and the NFL Parties timely filed their motion to dismiss. WDI, however, failed to comply with that district's local rule requiring an opposition to be filed within 21-days of service of a motion to dismiss. M.D. La. L.R. 7.5M. At the time this case was transferred, which WDI opposed, WDI's opposition was *already 79 days late*. It wasn't until this Court set a hearing date on the NFL Parties' motion that the plaintiff even bothered to file an opposition. The NFL Parties are aware of no rule that would revive the opposition deadline that plaintiff blatantly ignored. Accordingly, the Court should strike the plaintiff's opposition as untimely and grant the NFL Parties' motion to dismiss.

Under the new, higher pleading standards established by both *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), a clear practice and two-step procedure has been developed for district courts evaluating the sufficiency of a complaint. First, district judges must thoroughly examine the complaint for any allegations that appear "conclusory"— e.g., allegations that are but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. Next, judges should weigh the remaining facts against the prevailing legal standard in order to determine if the claim crosses over the threshold of "plausibility." The clear message sent by the Supreme Court was that courts should be wary of allegations in a complaint setting forth little more than elements of the legal claim at issue.

Here, even though it gave itself two additional bites at the pleading apple in its two amended Complaints, WDI's bare and conclusory allegations are utterly unsupported by facts. (For examples of such insufficient pleading, *see infra* Sections B-F.) Moreover, all four of the cases relied upon by WDI in its Opposition to the NFL Parties' motion are inapposite as they were decided *before* the new *Twombly/Iqbal* standard governing sufficiency of pleading standards. (*See* Opp. at 2).

**B.     WDI Has Conceded The NFL Parties' Motion to Dismiss as to Counts 6, 15, and 16 of the Original Complaint**

In their Motion to Dismiss, the NFL Parties asserted that WDI failed to state a claim for relief for tortious interference of contract, trademark infringement under Florida state law, and conspiracy. *See* Rec. Doc. 29-1, pp. 7-11. WDI has completely *failed* even to address those assertions in its Opposition. Under established law of this Circuit, when a non-movant fails to address an argument in its opposition, the court may consider that argument unopposed. *See Eversley v. MBank Dallas*, 843 F.2d 172 (5th Cir. 1988) (trial court did not err in accepting

- 3 -

1028387v.4

the defendant's summary judgment arguments as a prima facie showing of entitlement to judgment, as plaintiff failed to oppose); *Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 788 (M.D. La. 2004) ("Plaintiff failed to oppose [defendant's] argument on this point as well and the Court assumes plaintiff has no opposition to defendant's motion to dismiss..."). Accordingly, the Court should dismiss Counts 6, 15, and 16.

C. **WDI's Reliance on Common Law Authority Does Not Save its Disparagement Claims (Count 12)**

WDI has specifically alleged "*federal* commercial and product disparagement" claims. Orig. Comp. ¶¶ 150-157; First Am. Compl ¶¶ 156-163; Second Am. Compl. ¶¶ 140-147 (emphasis added). Section 43(a) of the Lanham Act provides the *sole* basis for *federal* commercial and product disparagement and delineates specific elements necessary to state such a claim: (1) use of a false or misleading statement of fact (2) in commerce (3) for commercial advertising or promotion (4) resulting in damages. 15 U.S.C. 1125(a); see *also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:24 (4th ed.). There is no legitimate dispute that WDI's Complaints fail to assert the necessary facts in accordance with the pleading guidelines set forth in *Twombly/Iqbal* and to acknowledge the appropriate legal standard governing federal commercial and product disparagement claims. *See, e.g.*, Rec. Doc. 29-1, pp. 18-20. For example, despite repeated opportunities WDI has declined to identify specific statements it claims the NFL Parties made about WDI's "goods, services or commercial activities", or allege that the statements were made in connection with "commercial advertising and promotion." *Id.*

Rather than supplying the necessary facts, WDI's Opposition instead attempts to substitute the legal analysis for *common law* product disparagement for the applicable federal

standard.[2] For example, WDI relies on *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). (*See* Opp. at 7-8.) But, tellingly, the section of that opinion cited by WDI relies expressly on *Systems Operation v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir. 1977), in which the court expressly applied the New Jersey state *common law* of product disparagement. *Id.* at 1140.[3] WDI's reliance on *common law* precepts having no application to the *federal* Lanham Act disparagement claims WDI alleges requires dismissal of WDI's disparagement claims as a matter of law. *See, e.g., Iqbal*, 129 S.Ct. at 1949; *see also Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 750 (8th Cir. 1980) (noting that § 43(a) "creates a federal statutory tort *sui generis* and does not merely codify the common law principles..."). Simply put, WDI has failed to assert *any* relevant or plausible factual basis or legal authority in support of its continued pursuit of a federal product disparagement claim. Accordingly, this Court should dismiss WDI's Count 12.

**D.   WDI's Breach of Contract Claim (Count 5) is Clearly Prescribed Under the Plain Allegations of the Complaints**

WDI seeks to support its breach of contract claim by now contending that that claim is not prescribed because the Saints did not breach the 1988 Incentive Agreement more than six years ago. WDI argues that the Saints' failure to comply with the contractual requirement to "immediately" record the trademark assignment agreement with the Louisiana Secretary of State in 1988 is not a breach because Louisiana trademark law does not require parties to record assignments of trademarks. (Opp. at 4.) But Louisiana statutory law governing

---

[2]   Notably, in *none* of its now *three* separate Complaints, has WDI asserted a state or common law disparagement claim.

[3]   WDI cites Sections of the Restatement (Second) of Torts and Prosser, which similarly address *common law* disparagement and do not purport to interpret the statutorily imposed elements of a disparagement claim under the Lanham Act. (*See* Opp. at 8).

perfecting trademark assignments has no bearing upon the *contractual* agreement between the parties or whether the Saints breached provisions of the agreement requiring the Saints to "immediately" record the trademark assignment. Compl. ¶ 47(l); First Am. Compl. ¶ 52(l); Second Am. Compl. ¶ 44(l).

WDI's new argument simply does not square with the breach of contract assertions in its Count 5. In Count 5, WDI expressly contends that the Saints violated the representations and warranties of the Incentive Agreement by continuing to assert ownership of the "Who Dat" designation despite the 1988 assignment to WDI. Compl. ¶ 47; First Am. Compl. ¶ 52; Second Am. Compl. ¶ 44. Thus, WDI's breach of contract claim vested when the Saints initially failed to recognize WDI's rights in the phrase "Who Dat" by taking actions implying the Saints' ownership of the mark -- including failing to file the assignment with the Secretary of State some *twenty-two years ago*, in 1988.[4] Once the Saints allegedly initially breached the Incentive Agreement in 1988 as asserted by WDI, no other actions taken constituted a new breach. *See, e.g., Pinnacle Pizza Co. v. Little Caesar Enterprises, Inc.*, 598 F.3d 970, 975 (8th Cir. 2010).[5]

Other allegations in the Complaint and First Amended Complaint also demonstrate that the breach of contract cause of action accrued more than 6 years ago. For

---

[4] If WDI's own allegations outlining the steps it has taken to protect its mark were in fact true, WDI would have easily discovered this fact no later than 1998. *See* Section E, *infra*.

[5] WDI insists that the NFL Parties' reliance on *Pinnacle Pizza Co.* 598 So. 2d at 975 is "disingenuous" because the case applies South Dakota and Michigan law. *See* Rec. Doc. 66 at 4. What WDI fails to note, however, is that both those states, like the applicable Tennessee law, have a six-year limitation period for filing a breach of contract claim. *Id*. Further, *Pinnacle Pizza* is highly instructive on the very point at issue here, since it contains an analogous factual scenario involving a defendant's purportedly unauthorized use of a trademarked phrase in contravention of a contractual agreement between the parties, and it also holds that the first unauthorized use of the phrase constitutes the date of the breach of contract. *Id*. at 976-78.

example, WDI alleges the Saints violated the Incentive Agreement by renewing the Louisiana trademark registration for "Who Dat" in 1998. [Compl. ¶ 48, First Am. Compl. ¶ 53, Second Am. Compl. ¶ 45]. Even under such an alternative scenario, WDI's breach of contract claim expired in 2004, yet WDI makes no argument in its Opposition to refute that conclusion. Accordingly, WDI's breach of contract claim (Count 5) should be dismissed.

E. *Contra Non Valentem* Does Not Salvage WDI's Fraud and Negligence Claims (Counts 13 and 14), and WDI Still Cannot Show that the Elements of Fraud and Negligence Have Been Satisfied

Under Louisiana law, a plaintiff is "deemed to know that which he could have learned from reasonable diligence." *Touchet v. Baker Hughes, Inc.*, 737 So. 2d 821, 825 (La. App. 3 Cir. 1999). The extraordinary and rarely applied doctrine of *contra non valentem* does not alter this rule. The "discovery rule" relied on by WDI does not apply "if the ignorance is attributable to the plaintiff's own willfulness or neglect; 'that is plaintiff will be deemed to know what he could by reasonable diligence have learned.'" *Resolution Trust Corp. v. Gaudet*, 1996 WL 34131 at *4 (E.D.La. Jan. 29, 1996) (citing *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994) and *Corsey v. State Department of Corrections*, 375 So. 2d 1319, 1321 (La. 1979)). WDI admits that, under Louisiana law, "prescription commences on the date the injured party discovers *or should have discovered* the facts upon which his cause of action is based." *Doskey v. Herbert*, 645 So. 2d 674, 679 (La. App. 4 Cir. 1994) (emphasis added).

Relying on *Doskey*, WDI contends "WDI had no basis to consider that the Saints and the NFLP were of the position that the Saints owned the trademark . . ." suggesting both that it "did not discover any of the violative conduct undertaken by the Saints and the NFLP" *and* that it was incapable of discovering such conduct before September 2009. (Opp. at 6.) But WDI's assertions simply do not follow in light of other assertions it has made in all three iterations of WDI's Complaint. For example, WDI claims that:

- it "takes action to prevent the infringement, dilution, disparagement, and misappropriation of *its marks*."

- it has obtained Louisiana state trademark registrations for the WHO DAT designation.

- it has made "efforts to obtain federal protection of its use of 'WHO DAT'. Filings were made in 1988, 1990, 1991, 1993 and 2010. Additionally, Who Dat?, Inc. opposed a filing made in 2002 for the 'Who Dat? Blues Band' . . ."

- *Perhaps most importantly*, WDI on September 3, 1988 "clearly and unequivocally" procured the assignment and transfer of a Louisiana state trademark registration of WHO DAT registered by the Saints on April 8, 1988.

*See* Orig. Compl. ¶¶ 38-39, 49; First Am. Compl. ¶¶ 46-47, 50; Sec. Amend. Compl. ¶¶ 5, 31-32, 34, 38-40, 45-46.[6]

In view of the foregoing contentions, WDI must have known or should have discovered that the Saints continued to claim ownership in the foregoing WHO DAT Louisiana State trademark registration at least as early as April 8, 1998. As the self-proclaimed clear and unequivocal owner of that state registration as of September 3, 1988 (the date of the 1988 Assignment), WDI knew or should have known that it was required to renew that registration by no later than April 8, 1998 in order to maintain its validity. (*See* La. R.S. § 51:216). Had WDI attempted to do so, it would have instantly discovered that the Saints continued to be listed as the record owner of that registration in the Louisiana Secretary of State's records.

---

[6] Notably, nowhere in the Original Complaint or the First Amended Complaint did WDI assert it had no knowledge of the NFL Parties' purportedly fraudulent and negligent representations of ownership of "Who Dat". Only in the *few days before the scheduled hearing of this motion* has WDI added purely conclusory statements in its Second Amended Complaint such as WDI was "unaware of [the NFL Parties'] actions and representations" as well as such language as the phrases "unbeknownst to Who Dat?, Inc." and "[w]ithout Who Dat, Inc.'s knowledge." (Sec. Amend. Compl. ¶¶ 48-49, 51). Such implausible conclusions cannot save the prescribed claims or trigger the application of *contra non valentum* in a *Twombly/Iqbal* world. *Twombly*, 127 S.Ct. at 1967-70 (court not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged.).

WDI cannot have it both ways. It cannot on the one hand contend (as it does repeatedly throughout its Complaints) that it continuously took action to protect the WHO DAT designation and claim great facility in obtaining Louisiana state and federal registrations for the WHO DAT designation, and then, in the same breath, assert that it was completely unaware of its statutory obligations to renew a key WHO DAT Louisiana state registration that contends it owned as of September 3, 1988. Clearly, under WDI's own version of the facts, it was aware of the Saints' ownership claim at least as of 1998. At a minimum, in view of WDI's obligation to seek renewal to maintain that important WHO DAT registration, there is no legitimate issue that it should have discovered the Saints' ownership claim at the time the April 1998 renewal was due. Thus, based on the facts WDI alleges (rather than the conclusory allegations of its ignorance), there is no doubt that WDI willfully and/or negligently ignored the very actions of which it now complains and the doctrine of *contra non valentum* does not apply. *See Corsey* and *Wimberly*, supra. The fraud and negligence claims (Counts 13 and 14) should be dismissed.

F. **WDI Cannot Recover Damages under the Louisiana Trademark Cancellation Provision (Count 2)**

WDI's contention that it can rely on the entire panoply of the Louisiana trademark statutes to support damages for under its cancellation claim is patently wrong. WDI improperly seeks damages for cancellation of trademark in its Complaints, a remedy that simply is not provided for in the statutory language governing cancellation. See La. R.S. § 51:219. Accordingly, Count 2 should be dismissed.

III. **Conclusion**

For the foregoing reasons, the Court should grant the NFL Parties' Motion to Dismiss Counts 2, 5, 6, 12, 13, 14, 15 and 16 of the Original Complaint and, if the Court permits

WDI to file the Second Amended Complaint, should strike any factual or legal allegations of tortious interference with contract, conspiracy and violation of Florida trademark law.

        Respectfully submitted,

        */s/  Lesli D. Harris*
        Phillip A. Wittmann, 13625 (T.A.)
        Michael Q. Walshe, Jr., 23968
        Lesli D. Harris, 28070
        Agnieszka A. McPeak, 31259

        STONE PIGMAN WALTHER WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, Louisiana  70130
        Telephone:  (504) 581-3200

        AND

        Jerre B. Swann
        Christopher P. Bussert
        James H. Sullivan, Jr.
        KILPATRICK STOCKTON, LLP
        Suite 2800
        100 Peachtree Street
        Atlanta, Georgia 30309-4528
        Telephone:  (404) 815-6500

        Attorneys for Defendants,
        NFL Properties LLC and
        the New Orleans Louisiana Saints, LLC

**CERTIFICATE**

    I hereby certify that on August 30, 2010 a copy of the foregoing Reply Memorandum in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

        */s/ Lesli D. Harris*

1028387v.4